# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMBER D.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 24-1148-JWL |
| LEE DUDEK,[2] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On February 18, 2025, Mr. Dudek became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted for Acting Commissioner Michelle King as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.      Background**

Plaintiff protectively filed an application for SSDI benefits on August 17, 2021, and applied for SSI benefits on September 24, 2021.  (R. 254, 256).[3]  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ found the opinion of Dr. Thayer persuasive but rejected his opinion that Plaintiff "does not have the ability to interact with others routinely and appropriately" without explanation for doing so.  (Pl. Br. 7) (quoting R. 422).  She also claims the ALJ erred in finding Dr. Thayer's opinion equally persuasive with the prior administrative medical findings of Dr. Bergmann-Harms without articulating the most persuasive factors in 20 C.F.R. § 404.1520c(c)(3-5).  (Pl. Br. 12).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less

---

[3] The ALJ's decision states both applications were made on July 16, 2021 (R. 10) (without citation to record evidence), but the record reveals the dates above and Plaintiff's brief tends to support those dates.  (Pl. Br. 1).

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.     The ALJ's Consideration of Dr. Thayer's Medical Opinion

Plaintiff recognizes that the ALJ summarized Dr. Thayer's report, noted the limitations he opined, and found his opinion persuasive. (Pl. Br. 7) (citing R. 16-17). She then quotes this court's explanation of the narrative discussion requirement in Social Security Ruling (SSR) 96-8p that "If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion." Id. 8 (quoting James Bradley H. v. O'Malley, Civ. A. No. 23-2514-JWL, 2024 WL 4103642, at *3 (D. Kan. Sept. 6, 2024) (citing SSR 96-8p, 1996 WL 374184 at *7)). She argues, "an ALJ must explain his reasons for accepting some of a physician's restrictions while rejecting others." Id. (citing Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007); Robert A. v. O'Malley, No. 23-1266-EFM, 2024 WL 4039896, at *3 (D. Kan. Sep. 3, 2024)).

Plaintiff quotes Dr. Thayer's opinion that Plaintiff "has fair social skills but does not have the ability to interact with others routinely and appropriately, as she appears to be easily upset and prone to circumstantiality." Id. (quoting R. 422). She argues, "The ALJ found Dr. Thayer's opinion supported by an explanation and consistent with the record." Id. at 9. She argues the ALJ only discounted Dr. Thayer's opinion by finding his opinion regarding a problem with "multi-step" work referred to complex work but, nonetheless, rejected Dr. Thayer's opinion Plaintiff "could not routinely or appropriately interact with others" when the ALJ found Plaintiff can "'tolerate occasional interaction with coworkers and supervisors but no contact with the general public' and no 'teamwork in completing job tasks.'" Id. (quoting R. 15). She argues the ALJ's RFC conflicts with Dr. Thayer's opinion Plaintiff cannot routinely or appropriately interact with others and the ALJ was required to explain why he did not adopt Dr. Thayer's opinion. Id. 9-10.

5

Plaintiff points out that in this court's decision in <u>James Bradley</u>, the court found that a physician's opinions were partially persuasive and provided reasons for rejecting portions of the physician's opinion. (Pl. Br. 10) (citing <u>James Bradley H.</u>, 2024 WL 4103642, *5, *6). She notes the court found

> however, that "the ALJ failed to account for Dr. Bleazard's opinion Plaintiff must wear an AFO brace or to explain why that limitation was not included in the RFC." [And the court] concluded: "Remand is necessary for the Commissioner to affirmatively determine whether Plaintiff requires the use of an AFO brace, and if not, to explain why Dr. Bleazard's opinion in that regard has been rejected."

<u>Id.</u> (quoting 2024 WL 4103642, *6, *7). She argues the <u>James Bradley</u> decision also requires remand here. <u>Id.</u>

The Commissioner argues the ALJ appropriately evaluated and adopted Dr. Thayer's medical opinion. He asserts Plaintiff's "argument is unsound as the ALJ's RFC findings fully account for Dr. Thayer's opinion, and the ALJ was not required to use Dr. Thayer's exact terms." (Comm'r Br. 6) (citing <u>Chavez v. Colvin</u>, 654 F. App'x 374, 375 (10th Cir. 2016) (while the ALJ "didn't parrot" a psychologist's ratings, the ALJ accounted for them by incorporating the overall assessment); and <u>Carver v. Colvin</u>, 600 F. App'x 616, 620 (10th Cir. 2015) (affirming where the ALJ "sufficiently captured the essence" of a psychologist's opinion)).

He argues,

> Plaintiff conflates functional limitations with workplace restrictions. Functional limitations, as outlined by Dr. Thayer, relate to a claimant's difficulties due to their impairments. However, workplace restrictions, what an ALJ must determine, are what restrictions to the type of work to be performed would account for a claimant's functional limitations.

6

Id. 7.

He argues Dr. Thayer's opinion does not contradict the RFC assessed by the ALJ because the RFC limitations "to only occasional interaction with coworkers and supervisors, and no contact with the public, … to work that did not require teamwork" and "to only simple work, simple instructions, simple decisions, work with no strict or short time deadlines, low work pressure, no multitasking, no detailed jobs tasks, no significant independent judgment, and work that had no more than occasional changes" fully accounts for Dr. Thayer's opined limitations, and assists in reducing "Plaintiff's overall stress which would in turn be helpful reducing her becoming upset, thereby further accounting for her particular social-interaction difficulties." Id. 7-8.

He argues a plain reading of both Dr. Thayer's opinion and the ALJ's RFC assessment belies Plaintiff's argument, and Plaintiff does not point to a particular workplace restriction which would better account for Dr. Thayer's limitations. He suggests an RFC restriction from all interaction with others would ignore Dr. Thayer's opinion Plaintiff has "fair social skills." Id. 8 (citing R. 422). He continues, arguing that Dr. Thayer's finding Plaintiff does not have the ability to interact with others routinely and appropriately does not mean she can never interact with others appropriately. Id. He argues,

> the only particular inappropriate habit identified by Dr. Thayer was circumstantiality, and there is no evidence that merely including additional, irrelevant details when conversing would require workplace restrictions, or lead to the type of intolerable behavior speculated by counsel at the hearing.

Id. 9.  He concludes,

> Plaintiff's unreasonable and unsupported reading of Dr. Thayer's opinion also conflicts with Dr. Thayer's own examination findings that Plaintiff was cooperative with logical and coherent speech; displayed normal behavior and good eye contact; and demonstrated good moral judgment, logical reasoning, and intact quality of thinking—none of which suggest a complete inability to interact socially as Plaintiff suggests.

(Comm'r Br. 9) (citing R. 418-19).

In her reply, Plaintiff claims the Commissioner's argument "imposes [his] own reading of Dr. Thayer's opined limitation and rests on impermissible post hoc rationalization." (Reply 2). She asserts Dr. Thayer's opinion Plaintiff "would be unable 'to interact with others routinely and appropriately' identified workplace limitations that should have been accounted for in the RFC." Id. (quoting R. 422). She asserts "'to respond appropriately to supervisor, coworkers" is one of the basic mental demands required" in unskilled work. Id. 3 (quoting (with errors) SSR 85-15, 1985 WL 56857 at *4 (SSA 1985)) (emphasis in Plaintiff's Reply).

Plaintiff asserts the Commissioner's arguments respecting circumstantiality, and that Dr. Thayer's opinion did not provide workplace restrictions were merely post hoc rationalizations because they were not relied upon by the ALJ. She argues this is so because "the ALJ did not indicate that she evaluated Dr. Thayer's opinion as not including workplace restrictions nor that she found the opinion was unsupported by his accompanying narrative or inconsistent with the record." Id. (citing R. 17).

Plaintiff acknowledges Dr. Thayer found Plaintiff "had 'fair social skills' and was 'prone to circumstantiality'" but argues "they do not minimize Dr. Thayer's opined limitation in [Plaintiff's] ability to interact with others." Id. She points out the

8

Commissioner's Brief did not specifically address Dr. Thayer's explanation that Plaintiff appears to "be easily upset." (Reply 4). Plaintiff concludes, arguing the court's duty is to determine whether the ALJ's understanding of the record is supported by the evidence, but "there is no indication in the ALJ's decision that she understood Dr. Thayer's opinion as Defendant contends or that she did not read the opinion as it was written: to indicate that [Plaintiff] could not routinely and appropriately interact with others." Id. She asserts the Commissioner's arguments "relied on a mischaracterization of the opinion and post hoc rationalization not provided by the ALJ." Id.

### A. Standard for Evaluating Medical Opinions

The regulations explain "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (2017). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2017). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R.

9

§ 404.1520c(b) (2017). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1) (2017). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2) (2017). The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5). 20 C.F.R. § 404.1520c(b)(3) (2017).

SSR 96-8 includes narrative discussion requirements for an RFC assessment. 1996 WL 374184, *6-7. One of those requirements is that if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion. Id. *7.

### B.     The ALJ's Relevant Findings

The ALJ found Plaintiff has the severe impairments of "major depressive disorder, generalized anxiety disorder, and the residual effects of a traumatic brain injury." (R. 13) (finding no. 3) (bold omitted). She found Plaintiff has moderate limitations in each of the four broad areas of mental functioning but, because she did not have two areas with marked limitation, one area with an extreme limitation, or that the Paragraph C criteria

are satisfied, none of Plaintiff's impairments meet or medically equal any Listed impairment. (R. 13-14).

The ALJ explained her finding of a moderate limitation in Plaintiff's ability to interact with others:

> In interacting with others, the claimant has a moderate limitation. In the her [sic] function reports, she alleged she had problems getting along with others, because she can be argumentative and her judgement and memory are poor (Exhibit B4E, p.5 [(R. 305)]; Exhibit B7E, p.8 [(R. 326)]). However, she also remained able to attend bible [sic] study socially (Exhibit B7E, p.8 [(R. 325)]). She also texts others to socialize (Exhibit B7E, p.8 [(R. 326)]). Her records do indicate some combative behavior, as well as issues with anger and frustration. Nevertheless, she can maintain friendships, go out in public, and generally manage her emotions, despite some outbursts that limit her functioning. As a result, based upon consideration of the record as a whole, the undersigned finds the claimant has a moderate limitation in this area.

Id..

The ALJ assessed only mental functional limitations in Plaintiff's RFC:

> the claimant can understand, remember, and carry out commands involving simple instructions and make simple work related decisions; sustain concentration, persistence, and pace through simple tasks; tolerate occasional interaction with coworkers and supervisors but no contact with the general public; perform job tasks independently, appropriately, and at a consistent pace in goal oriented work in which job tasks do not have to be completed within a strict time deadline; and tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in work setting[.]

Id. at 15 (finding no.5) (bold omitted).

She explained she had "considered the medical opinion[s] and prior administrative medical finding[s] in accordance with the requirements of 20 CFR 404.1520c and 416.920c." Id. The ALJ noted that Plaintiff had previously applied for SSDI and SSI

11

benefits and had been denied on June 3, 2021, the day before Plaintiff's alleged onset date in this case – June 4, 2021. (R. 16). She noted Plaintiff's alleged onset date "does not correspond to any change in the medical record or increase in reported symptoms" and the "prior decision notes that the claimant had been hospitalized in 2019, followed by rehabilitation, due to a traumatic brain injury sustained in a motor vehicle accident." Id.

The court quotes in its entirety the ALJ's relevant discussion of Plaintiff's treatment history and of her evaluation of the medical opinion of Dr. Thayer and of the prior administrative medical findings of the state agency psychological consultant, Dr. Bergmann-Harms.

> There is no indication of any change in her condition in March 2021 and nothing contemporaneous that implies limitations in excess of this decision, even at that time. The claimant would report continuous improvement in her mental condition from the time of this prior denial through the most recent mental reports in this case, suggesting her limitations were also decreasing throughout this period.
>
> She reported continued improvement in memory in July 2021 (Exhibit B9F, p.3). It appears this improvement then continued, showing a likely decrease in limitations with time. In January 2022, she alleged memory loss and an inability to focus (Exhibit B9F, p.2). She was noted to show continuous improvement and continued to decline medications (Exhibit B9F, p.2). Consistent with her reports of improvement, her physical treatment appointment in September 2021 indicated only a slight delay in recall in her exam findings, associated with conversation (Exhibit B11F, p.35).
>
> Then, in July 2022, the claimant did appear "mildly anxious," with no other described issues, and she declined medication for depression or anxiety (Exhibit B9F, p.1). Otherwise, her subsequent records indicate her improvement continued, without apparent interruption, throughout her alleged period of disability in this case (e.g. Exhibit B14F). She remained physically and mentally active (Exhibit B14F, p.3). By September 2023, she reported only depressed mood, but her exam findings reflected no mental abnormalities (Exhibit B15F, p.3, 7).

> Moreover, her mental exam findings in her treatment notes indicate few, if any, ongoing functional deficits.
>
> Additionally, the claimant also underwent a consultative examination in June 2022 with Richard Thayer, Psy.D. (Exhibit B7F). During this exam, the claimant was circumstantial, and she had trouble directly answering questions (Exhibit B7F, p.3). Her exam findings also indicated fair judgment and insight, and impaired delayed recall (Exhibit B7F, p.4). Otherwise, her exam findings were unremarkable, and she remained able to perform simple match [(math)] and display average intellectual functioning (Exhibit B7F, p.4-5). IQ testing also indicated that she retained a high average IQ (Exhibit B7F, p.5).
>
> The examiner also suggested that the claimant's alleged symptoms could reflect post traumatic stress disorder (PTSD) in addition to the claimant's other impairments (Exhibit B7F, p.8). However, this is not indicated in other records.
>
> Based on this exam, Dr. Thayer also indicated the claimant has moderate to mild limitations in functioning. This includes an inability to interaction [sic] with others routinely, or to adapt to changes, accompanied by a slight problem with multi-step and complex instructions, and with making work related decisions (Exhibit B7F, p.8-9). This opinion is explained by the accompanying narrative, which links these limitations to particular symptoms alleged by the claimant. In addition, this is consistent with the claimant's exam findings, which reflect good functioning throughout the record, despite complaints of depression and anxiety. It is also consistent with her findings during this exam, which reflect circumstantial thoughts and some issues with delayed memory, but otherwise unremarkable findings. As a result, this opinion is persuasive. However, in interpreting this opinion, the undersigned notes that "multi-step" appears to refer to complex work rather than suggesting that some lesser level of work is also precluded.
>
> Multiple statements were also provided by Terri Schmitz, MA., the claimant's counselor. These statements are not persuasive evidence of greater limitations than already assessed in this case.

(R. 16-17).

> In May 2023, Elizabeth Bergmann-Harms, Ph.D., reviewed the claimant's records and provided an opinion on behalf of the Department of Disability Determination Services (Exhibits B6A, B7A). This opinion indicated that the claimant had a number of moderate limitations, with the ability to

13

> understand and remember simple and detailed instructions, sustain concentration, persistence, and pace for simple tasks that do not require a fast pace or strict production quotas or coordination with others, can have minimal interpersonal interaction, and would do best in a job with limited change. This is consistent with the record; as noted by Dr. Bergmann-Harms the claimant has current testing from her most recent consultative exam indicating average to superior cognitive abilities, although her loss of focus and other reported symptoms likely restrict her to simple tasks. Likewise, the claimant's complaints of anxiety and the observations of behavioral problems support limited interaction with co-workers and supervisors, but no interaction with the general public. Dr. Bergmann-Harms further supported this opinion with an accompanying summary of the record relied on in this case, which does further bolster this opinion. As a result, this opinion was persuasive in this case.

(R. 19).

### C.   Analysis

As noted above, the ALJ found both Dr. Thayer's and Dr. Bergmann-Harms's opinions persuasive. As relevant to the issue raised by Plaintiff, Dr. Thayer opined, "There appears to be moderate impairment in Amber's current overall functional capacity. Amber has fair social skills but does not have the ability to interact with others routinely and appropriately, as she appears to be easily upset and prone to circumstantiality." (R. 422). Similarly, Dr. Bergmann-Harms opined Plaintiff's "CPP [(Concentration, Persistence, and Pace)} is limited by anxiety/mood sx [(symptoms)]. She can sustain CPP for simple tasks that do not require a fast pace or strict production quotas or coordination w/ others." Id. at 169 (bold omitted). She further opined Plaintiff "can work in jobs that require minimal interpersonal interaction," and "will do best in a predictable workplace with limited change in routine/expectations." Id. 170. She provided an additional explanation for Plaintiff's Mental RFC – that she "will do best in a

14

predictable workplace with limited change in routine/expectations." (R. 170). The RFC assessed by the ALJ provided these limitations as relevant to the issue here: Plaintiff can "tolerate occasional interaction with coworkers and supervisors but no contact with the general public; perform job tasks independently, appropriately, and at a consistent pace in goal oriented work in which job tasks do not have to be completed within a strict time deadline; and tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, more than occasional changes in work setting.

Plaintiff argues Dr. Thayer's opinion quoted above conflicts with the RFC assessed but the ALJ failed to explain why she did not include that opinion in the RFC assessed. As Plaintiff appears to recognize, the first question is whether Dr. Thayer's opinion conflicts with the RFC assessed. She argues there is a conflict because the ALJ found Plaintiff can "tolerate occasional interaction with coworkers and supervisors but no contact with the general public" (R. 15), whereas Dr. Thayer opined she "does not have the ability to interact with others routinely and appropriately;" id., 422; suggesting she is simply unable ever to interact with others either routinely or appropriately.

The court disagrees. As the Commissioner points out, Plaintiff's argument ignores the rest of the sentence in which Dr. Thayer's opinion appears, and ignores the context of Dr. Thayer's report and the record as a whole. First, Dr. Thayer opined Plaintiff has fair social skills, which tends to suggest she has some ability to interact with others. Dr. Thayer explained the basis for Plaintiff's lack in ability to interact with others routinely and appropriately is because "she appears to be easily upset and prone to

15

circumstantiality." (R. 422). The RFC assessed accounts for Plaintiff's being easily upset by limiting her to only occasional interaction with supervisors or coworkers and no interaction with the public, precluding strict time deadlines, permitting only low work pressure and defining such work to preclude multitasking, detailed tasks, significant independent judgment, very short deadlines, teamwork, or more than occasional changes in the work setting. Id. 15.

> The American Psychological Association defines "circumstantiality" as
>
> n. circuitous, indirect speech in which the individual digresses to give unnecessary and often irrelevant details before arriving at the main point. … Circumstantiality differs from tangentiality in that the main point is never lost but rather accompanied by a large amount of nonessential information.

American Psychological Association, available at, https://dictionary.apa.org/circumstantiality. Last visited, March 13, 2025. Thus, the ALJ accounted for Plaintiff's lack in ability to interact routinely and appropriately due to circumstantiality by limiting her to interacting with supervisors and coworkers only occasionally and allowing no contact with the public.

Moreover, the context of the record evidence in toto supports that understanding. As the ALJ noted, Plaintiff was found not disabled after a prior application in a decision dated June 3, 2021 (R. 16) and despite intermittent reports of acute periods of problems which the ALJ cited in her step three analysis when finding only a moderate limitation in the broad mental area of interacting with others, id. 14 (quoted supra at 11), the record evidence reveals reports of consistent improvement in her condition. Id. 16 (quoted supra at 12). Plaintiff declined any medications for her mental impairments, which suggests

16

they were not as severe as she alleges. (R. 16). And, as the ALJ noted, Plaintiff's "mental exam findings in her treatment notes indicate few, if any, ongoing functional deficits." Id.

And, although Plaintiff's therapist, Ms. Schmitz, opined extensive functional limitations causing Plaintiff to be unable to work, the ALJ found they "are not persuasive evidence of greater limitations than already assessed." (R. 17). The ALJ provided an extensive explanation of the inconsistencies leading her to discount Ms. Schmitz's opinions: In Ms. Schmitz's treatment notes, Plaintiff "alleged only limited issues that would interfere with work, such as being "tired" and "testier." Id. Although the treatment notes record Plaintiff's reports of struggles with memory and needing "multiple coping mechanisms with personal care, she also indicated she was continuing with" college. Id. The treatment notes contain Plaintiff's "reports and allegations, but few observations or exam findings." Id. The notes record Plaintiff being combative during isolated instances and that she misses appointments but only one instance of a missed appointment appears in the record and the ALJ noted, "These records provided little insight into the claimant's actual remaining functioning, although they do indicate the claimant feels anxious about a number of situations, including returning to work." Id. The ALJ notes, "Ms. Schmitz refers to numerous symptoms that are simply not reported in the record after the alleged onset date, which does suggest this opinion large[ly] addresses the period between the 2019 accident and the prior 2012 [sic (2021)] decision." Id. "Ms. Schmitz opines that the claimant has limited functioning due to her diagnoses; however, the diagnosis [by itself] does not imply any particular level of limitation. She

17

also alleges the claimant's condition is stable and not expected to improve, although consistent improvement is indicated in other records. She also alleges the claimant has reported a number of symptoms not documented in her other treatment notes, which are also not supported by the limited records from Ms. Schmitz after the alleged onset date." (R. 17-18) (emphasis in original). The ALJ noted Ms. Schmitz opined that Plaintiff is unable to work in most settings due to distractibility, but noted "Supporting observations of distractibility or being off task are not described in these records, or by other providers." Id. 18.

As Plaintiff asserts, the Commissioner's arguments respecting circumstantiality and workplace restrictions verses functional limitations constitute post hoc rationalization at least in the sense that they present rationale produced after the decision at issue was made. However, they are not post hoc rationalization such as that prohibited in a Social Security disability case because they do not attempt to provide a rationale different than that provided by the ALJ to show that Plaintiff is not disabled. Rather, they provide rationale to demonstrate that the ALJ, who understands the Act and the regulations regarding disability and who understands circumstantiality and functional workplace limitations, recognized that there is no conflict between the RFC assessed by her and the opinions of Dr. Thayer or Dr. Bergmann-Harms which were found persuasive by her and, therefore she did not need to address any conflict.

Plaintiff's argument, that "there is no indication in the ALJ's decision that she understood Dr. Thayer's opinion as Defendant contends or that she did not read the opinion as it was written: to indicate that [Plaintiff] could not routinely and appropriately

18

interact with others" (Reply 4), does not require a different result. First, as explained above, the ALJ did indeed read Dr. Thayer's opinion as it was written – "Amber has fair social skills but does not have the ability to interact with others routinely and appropriately, as she appears to be easily upset and prone to circumstantiality." (R. 422). Moreover, the ALJ's decision reveals it was produced by the ALJ in the context of and with an understanding of the Act, the Social Security Regulations, and the medical issues presented, and this is every indication that the ALJ understood Dr. Thayer's opinion as the Commissioner contends.

Finally, Plaintiff points to no record evidence compelling a different finding. Therefore, Plaintiff has not met her burden to demonstrate a conflict between the RFC assessed in this case and Dr. Thayer's opinion.

## III. Opinions – Equally Persuasive and Exactly the Same

As Plaintiff points out, the regulations provide that when two or more medical opinions or prior administrative medical findings about the same issue are equally well-supported and equally consistent with the record but are not "exactly the same" the SSA must articulate how it considered the other most persuasive factors from 20 C.F.R. § 404.1520c(c)(3-5). 20 C.F.R. § 404.1520c(b)(3). As explained above, although Dr. Thayer's opinion and Dr. Bergmann-Harms's prior administrative medical finding about Plaintiff's ability to interact with others do not use the same terminology, they are exactly the same and exactly the same as the ALJ's RFC on that issue. Consequently, Plaintiff's argument that remand is required because they are not exactly the same and the ALJ erred in failing to articulate the other most persuasive factors fails.

19

Because Plaintiff has not met her burden to show error in the ALJ's decision, it must be affirmed.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 13, 2025, at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**